Deig, Executor, *et al. v.* Morehead.

---

No. 11,758.

## Deig, Executor, et al. *v.* Morehead. .

Will.—*Action to Contest.—Trial by Jury.*—Actions to contest the validity of wills are statutory, and a trial by jury may be demanded.

Jury.—*Regular Panel.—Filling Vacancies.—Discretion of Trial Court.*—The manner of filling vacancies in the regular panel of the petit jury, no matter how occurring, is left by statute to the discretion of the trial court, and it may direct that such vacancies be filled from bystanders. instead of from other names selected by the jury commissioners.

Evidence.—*Admission of Irrelevant and Immaterial Evidence.—Reversal of Judgment.*—The admission of merely irrelevant or immaterial evidence, even though erroneous, is not, as a general rule, available for the reversal of the judgment.

Same.—*Expert Testimony.—Hypothetical Question.—Objection.*—Whether the facts assumed to exist for the purpose of a hypothetical question propounded to a witness called as an expert are true, or established by the evidence, is for the jury, upon the evidence adduced, and such matters. can not be made the basis of objections to the question.

Instructions to Jury.—*How Construed.—Reversal of Judgment.*—Instructions to a jury will be construed with reference to each other and as an entirety, and if, when thus construed, they are correct and not calculated to mislead, the judgment will not be reversed because of mere inaccuracies or loose expressions in them, separately considered.

From the Posey Circuit Court.

*A. P. Hovey* and *G. V. Menzies,* for appellants.
*W. P. Edson* and *E. M. Spencer*, for appellee.

Howk, J.—This was a suit by appellee, Wilhelmina Morehead, against the appellants, to contest the validity of a certain paper writing, purporting to have been executed on the 11th day of March, 1883, by one George Frank Maurer, as his last will and testament.

Appellee's complaint was filed on the 9th day of May, 1883, and contained two paragraphs. In the first paragraph, appellee alleged that, on the 11th day of March, 1883, George F. Maurer died in Gibson county, Indiana, leaving as his only heirs at law the appellee, Wilhelmina, and appellants, William Charles Maurer and Andrew John Maurer, who were his only children; that said George F. Maurer, at the time of his death, was seized and possessed of property, real and personal, situate in Posey county this State, of the value of ten thousand dollars or more; that said George F. Maurer died intestate, leaving, however, a pretended will, a copy of which was therewith filed, purporting to devise all of his estate, real and personal, to the appellee and the appellants, and nominating appellant, John B. Deig, executor of such pretended will, and appointing him guardian of the appellants William Charles and Andrew John Maurer; that at the time of the making of such supposed will by said George F. Maurer, he, the said George F. Maurer, was not of sound mind; and that the said George F. Maurer never executed such pretended will, nor signed his name thereto, and, therefore, such pretended will was not duly executed by him. Wherefore, etc.

The second paragraph of appellee's complaint alleges substantially the same general facts as the first paragraph, except that it is not charged, in such second paragraph, that the said George F. Maurer, at the time of his making such pretended will, was of unsound mind, and except, also, that the second paragraph charges more specifically than the first

paragraph of complaint, the undue execution of such pretended will, by alleging that the same was not signed by the said George F. Maurer, nor by any other person at his request, or with his knowledge or consent, in the presence of two witnesses, nor was his signature thereto ever attested by two witnesses, and, therefore, appellee averred that such pretended will of the said George F. Maurer was never executed by him, as his will. Wherefore, etc.

Appellants jointly answered by a general denial of the complaint. The issues joined were tried by a jury, and a verdict was returned for the appellee; and over appellants' motion for a new trial, the court adjudged and decreed that the probate of the will of George F. Maurer, deceased, should be set aside, and declared and decreed such will to be null and void, and further adjudged that appellee should recover of the appellants her costs and charges in this behalf expended.

Errors are assigned here by the appellants, which call in question the rulings and action of the court below, (1) in submitting the issues in this case to a jury for trial, over appellants' objections, (2) in directing the panel of the jury to be filled from the bystanders, instead of filling vacancies from the regular panel, as selected by the jury commissioners, (3) in directing the sheriff of the county to fill vacancies in the regular panel from the bystanders, instead of from names selected by the jury commissioners, and in permitting those persons, selected by the sheriff from the bystanders, to be sworn and empanelled as a part of the jury to try the issues in this cause, over appellants' objections, and (4) in overruling appellants' motion for a new trial.

We will consider these alleged errors, and decide the questions arising thereunder, in the same order in which appellants' learned counsel have presented and discussed them in their able and exhaustive brief of this cause.

1. Appellants' counsel earnestly insist that the circuit court erred in submitting the issues in this case to a jury for

trial, over their objections. It is shown by a bill of exceptions, properly in the record, that when the cause was at issue and called for trial, appellee demanded a jury to try the issues joined; "whereupon the defendant John B. Deig objected to the trial of this cause by a jury at the time, and insisted upon the trial of said issues by the court, and thereupon the court overruled the objection of defendant, and caused a jury to be empanelled to try the issues herein." This is all that is shown by the bill of exceptions, in relation to the action of the court in overruling appellants' objection to the trial of the cause by a jury. Strictly speaking, therefore, it might well be said that appellants can not be heard to complain here of the overruling of their objection to the trial of the cause by a jury, because it is not shown by the record that they excepted to such ruling. Waiving this point, however, we are of opinion that the action of the court below in submitting the issues in this cause, upon appellee's demand, to a jury for trial, was not erroneous. Of course, appellants' objection to the trial of the cause by a jury, and their demand for a trial by the court of the issues herein, were based upon the theory that actions to contest the validity of wills were "causes that, prior to the 18th day of June, 1852, were of exclusive equitable jurisdiction," and that, therefore, under the provisions of section 409, R. S. 1881, "issues of fact," in such actions, could only be "tried by the court." This theory is erroneous.

For many years past, it has been uniformly held by this court, that actions to contest the validity of wills were statutory actions. Thus, in *Harris* v. *Harris*, 61 Ind. 117, the court said : " It is clear, we think, that actions to contest the validity, and to resist or set aside the probate of an alleged last will, are purely statutory ; that is, they can only be brought, and successfully maintained in the court, within the time and upon the grounds prescribed in and by the statute which authorizes such actions."

In the recent case of *Lamb* v. *Lamb*, 105 Ind. 456, the

precise question we are now considering, namely, the right of a party to a trial by jury in actions to contest the validity of wills, came before this court for consideration and decision, and the right to a trial by jury in such actions was fully sustained by the court. It was there said : " The issue in such an action as this was not one of exclusively equitable jurisdiction prior to June 18th, 1852, and, therefore, it is not within the provisions of section 409, R. S. 1881. The proceeding to contest a will in a court of law under our system is purely one of statutory creation, and the provisions of section 409, of the code of 1881, do not apply to such proceedings. *Trittipo* v. *Morgan,* 99 Ind. 269. In order to bring a case within the provisions of that section of the code, it must appear that the proceeding was such as was exclusively one of chancery jurisdiction, and a proceeding can not be of chancery jurisdiction which is the creature of a positive statute and was unknown to the old courts of chancery. The statute of 1843 gave a right to a jury trial in express terms, and this repels the implication that an action to contest a will was of exclusive equitable jurisdiction. The right to a trial by jury is treated as not open to question by the authors who have written upon the question. 1 Redf. Wills, 49, 50 ; Sackett Instructions to Juries, 432."

What we have quoted from our opinion, in the case last cited, affords a complete answer to the arguments and authorities of appellants' learned counsel in support of their claim, in the case under consideration. We are clearly of the opinion that the court below committed no error in submitting the issues of fact in this cause to a jury for trial, over the objections of appellants.

2. The next error complained of in argument, by appellants' counsel, is the action of the court in directing the panel of the jury to be filled from the bystanders, instead of filling vacancies therein from the regular panel, as selected by the jury commissioners. It is shown by a bill of exceptions in the record of this cause, that " in empanelling the jury herein,

three of the regular panel being legally excused, the court permitted and directed the sheriff to select three jurors from the bystanders, without selecting said jurors from the jurors selected by the jury commissioners of Posey county for the year 1884, and not specially drawn for this term, to which the defendant at the time objected and excepted."

There is no available error, we think, in the action of the court of which appellants' counsel complain. In section 1387, R. S. 1881, it is provided that within a period not more than one week preceding the commencement of any term of the circuit court of any county, like Posey, having no criminal court, the jury commissioners of the county shall draw from the box, provided for that purpose, "six names of competent persons, who shall be summoned as the grand jury for such ensuing term;" and that within the same period preceding any term of the circuit court of any county, like Posey, having no criminal or superior court, the jury commissioners of the county shall draw from such box twelve names of persons, as petit jurors for such court, at such term. These jurors are thus drawn by the jury commissioners, pursuant to the requirements of the statute, and without any order of court, and they constitute the regular panels, grand and petit, for the term. Whether or not other names shall be drawn from the jury-box, at any time during such term, we think, is wisely committed by our statute to the sound discretion of the circuit court. Section 1388, R. S. 1881.

In section 532, R. S. 1881, it is expressly provided that " When the regular panel is exhausted, or is insufficient from any cause, the sheriff shall call the bystanders, or fill the jury in such a manner as the court may direct."

Construing together all the provisions of our statutes in relation to jury trials, it must be held, we think, that the Legislature intended to leave the manner of filling vacancies in the regular panel of the petit jury, no matter how occurring, to the direction and in the discretion of the trial court.

In the case in hand, it is not claimed, or pretended, that the court below abused its discretion in directing the sheriff to fill the vacancies in the regular panel from the bystanders, nor that the appellants were prejudiced or harmed in any manner by such direction and action of the trial court. *Heyl* v. *State*, 109 Ind. 589.

3. What we have said, in considering the second error assigned by appellants, applies equally as well to the third error of which they complain. Neither of these two errors is well assigned, and neither of them, in our opinion, authorizes or requires the reversal of the judgment.

4. The last error of which appellants complain is the overruling of their motion for a new trial. In this motion a number of causes for such new trial were assigned, consisting, chiefly, of alleged errors of law occurring at the trial, in the admission or exclusion of offered evidence, and in giving or refusing to give certain instructions. Of these causes for a new trial, we will consider such only as the appellants' counsel have presented and discussed in their brief of this case. In considering the rulings of the trial court, in the admission and exclusion of offered evidence, there are some uncontroverted facts in the case which should be steadily kept in mind, and these facts we will first briefly notice.

George F. Maurer was about sixty years old at the time of his death. In 1879 his daughter, the appellee, with the full consent of himself and his wife, was married to one Marion Morehead, and she and her husband removed to Kentucky. About one year afterwards, his wife, the mother of appellee, died; and after the death of his wife, George F. Maurer went after appellee and her husband and took them home with him, where they all lived together as one family, for about two years. Then appellee and her husband left her father's house and removed to Mt. Vernon, Indiana, where they were living at the time of her father's death.

It is fairly shown, we think, by the evidence, that, after the death of his wife, and, especially, after the removal of

his daughter, appellee, and her husband to Mt. Vernon, George F. Maurer became morbid in mind, gloomy and morose in temper, anxious about his epileptic boy, and easily affected to tears. He began to talk harshly about his daughter, appellee, and to charge that she had treated him very badly, and had called him hard and bad names; that he was away from home when appellee removed from his house, and when he returned home " the house was near about stripped ; " and that she had already got a large part of his estate—that he " had given her six or seven hundred dollars, besides bedding, furniture," etc.

The disease of which George F. Maurer died, is called, in the evidence of an attending physician, " double pneumonia, might be called typhoid pneumonia, with malaria." In the last stages of his disease, it was shown by the evidence that he was stupid, drowsy and delirious. On the morning of the 13th day of March, 1883, he was induced and assisted to sign the will, which is the subject of this suit, and in about two hours afterwards he died. By such will so executed, he gave to his church and pastor twice as much of his estate as he gave the appellee, his only daughter. His bequest to appellee was in these words : "*Third.* I give and bequeath to my beloved daughter, Mina, wife of Marion Morehead, fifty dollars, since she already received a great share of my estate."

In the next item of such will, he provided as follows : " The residue of my estate, both real and personal, after the above stipulations have been fulfilled, shall be equally divided among my two beloved sons, William George and Andrew John Maurer." It was shown by the evidence that the aggregate value of his estate, real and personal, was about ten thousand dollars.

Appellee's case which she endeavors to sustain by evidence was, that George F. Maurer was of unsound mind, in that he was wholly under the influence of an insane delusion, in charging that appellee treated him badly and called him harsh names; that she had " near about stripped " his house

when she removed therefrom, and that she had already got a large part of his estate, etc.; and that this insane delusion entered into his will and caused him to cut her off with a nominal bequest, and to state therein that appellee had already received a great share of his estate. She further claimed, that, dying as he did from a complication of diseases, the natural tendency of which, according to the evidence, was to burden and overwhelm his mental faculties with "thick-coming fancies," with illusions, delusions and hallucinations, it was absolutely impossible in the nature of things, that, within two brief hours of the close of his mortal existence, he should be possessed of sufficient strength, either of body or mind, to enable him to make a valid will.

By her evidence, appellee sought to show that at all times and under all circumstances, as well after as before her marriage, she had always been to her father a faithful, affectionate, industrious and dutiful daughter; that her intercourse with her father, during his life, both before and after her marriage, had always been mutually pleasant, harmonious and affectionate; and that she had never, at any time, either taken or received any article of her father's property, or any part or share of his estate. The field of examination was of necessity, therefore, a broad one; but while some of the evidence, admitted over appellants' objections, if it stood alone, would seem to be irrelevant or immaterial, yet, considered with reference to the entire case, we can not say that any of the rulings of the court, in the admission of evidence, complained of here by appellants' counsel, were erroneous to such an extent as to authorize or require the reversal of the judgment. Without examining in detail the several alleged errors of law, occurring at the trial, in the admission or exclusion of offered evidence, of which appellants' counsel complain in argument, we are of opinion that these supposed errors are not, nor is either of them, available to the appellants for the reversal of the judgment. The utmost that can be said as against any of the evidence admitted

over appellants' objections is, that some of such evidence, if it stood alone without reference to or connection with other evidence appearing in the record, would seem to be irrelevant or immaterial. As a general rule, the admission of merely irrelevant or immaterial evidence, even though erroneous, is not an available error; and while this rule, like other general rules, has its exceptions, still the evidence complained of here does not, we think, fall within any of such exceptions.

Appellants' counsel also insist that the trial court erred in permitting appellee to propound a certain hypothetical question to one of her medical witnesses, and in allowing such witness, over appellants' objections, to answer such question. It is shown by the bill of exceptions that, when the hypothetical question was propounded by appellee to the witness, it "was objected to by defendants for the reason that the facts stated in such question had not been adduced in evidence, that some of the statements contained in the question were not true, and that the question was not relevant or pertinent to the issue." The court overruled the objection, and to this ruling appellants at the time excepted, and the witness answered the question.

The court did not err, we think, in overruling these objections to the hypothetical questions propounded by appellee to her medical witness. The opinion of a witness, called as an expert, must be based upon proved or admitted facts, or upon such facts as are assumed to exist for the purpose of a hypothetical question. *Guetig* v. *State*, 66 Ind. 94 (32 Am. R. 99); *Burns* v. *Barenfield*, 84 Ind. 43; *Elliott* v. *Russell*, 92 Ind. 526; *Craig* v. *Noblesville, etc., G. R. Co.*, 98 Ind. 109; *Louisville, etc., R. W. Co.* v. *Falvey*, 104 Ind. 409.

In the case in hand, appellee assumed the existence of a certain state of facts, as a hypothetical case, and thereon based the question which she propounded to her medical witness. It was no sufficient objection to such question, that the facts stated therein had not been put in evidence, nor did

it lie in the mouth of the appellants to say, that all or any of the statements of facts, contained in such question, were not true. In her question appellee assumed that all the facts stated therein were true; and whether or not the facts so assumed were or had been established by the evidence, and whether or not all or any of such facts were true, were questions for the consideration and determination of the jury, upon the evidence adduced, but, in no event, could all or any of these questions be made the basis of valid objections by the appellants to appellee's hypothetical question.

Finally, appellants' counsel very earnestly insist, that the trial court erred in its instructions to the jury trying the cause. We have carefully examined and considered all of these instructions, and we have reached the conclusion that, as a whole, they contained a full and fair statement of the law, applicable alike to the issues in this cause and to the case as made by the evidence. Doubtless, it is true in this case, as in many others which have come before us, that if these instructions were dissected, and pulled apart and separated into paragraphs and broken sentences, there might be found therein loose, unguarded and inaccurate expressions, which if they stood alone and unsupported, and were not controlled by the context, would be clearly erroneous. But it is well settled by our decisions, that the instructions of the court to a jury must be construed with reference to each other, and as an entirety; and if, when thus construed, the instructions contain a full, fair and correct statement of the law, applicable to the issues and the evidence in the cause, and are not calculated to mislead the jury, the judgment will not be reversed because of mere inaccuracies or loose expressions in such instructions, separately considered. *Kirland* v. *State,* 43 Ind. 146; *McCulley* v. *State,* 62 Ind. 428; *Siebert* v. *State,* 95 Ind. 471; *Stout* v. *State,* 96 Ind. 407; *Goodwin* v. *State,* 96 Ind. 550; *McCarty* v. *Waterman,* 96 Ind. 594; *Union Mut. Life Ins. Co.* v. *Buchanan,* 100 Ind. 63; *Gallaher* v.

*State,* 101 Ind. 411; *Cline* v. *Lindsey, ante,* p. 337; *Louisville, etc., R. W. Co.* v. *Jones,* 108 Ind. 551.

Applying this rule to the case under consideration, we are clearly of the opinion that there is no such error in the instructions of the trial court as will .authorize or justify the reversal of the judgment below.

Appellants' motion for a new trial herein was correctly overruled.

The judgment is affirmed, with costs.

Filed April 20, 1887.