**Dennis Luther LEWIS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 382S107.**

Supreme Court of Indiana.

Oct. 27, 1982.

Patrick N. Ryan, Jack B. Welchons, Ryan & Welchons, Marion, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was charged in two counts. Count I was for Rape and Count II for Confinement. He was tried before a jury and found guilty on each count. He was sentenced to a twenty year term for rape and a six year term for confinement. The terms are to run concurrently.

On the evening of February 16, 1981, the victim of the crime, B.R., was working at her job as a clerk in the Interstate Auto Auction in Anderson. Sometime that evening B.R.'s girlfriend, one Becky Hilligoss, introduced B.R. to appellant. Ms. Hilligoss suggested that after the auction was closed she, B.R., appellant and Ms. Hilligoss's boyfriend, one John Moriarity, go out for a drink. B.R. agreed. When the auction closed the four rode in Moriarity's truck to a nearby motel bar.

At the bar, B.R. danced with appellant at his request on four or five occasions. She testified he kissed her several times during their stay at the bar. She said nothing to indicate her disapproval of his advances but did frown at him and thought he would understand that she disapproved of his actions. At some point B.R. called her husband at home to let him know where she was but did not mention appellant.

After an hour and a half or so the four left the bar and went to a coffee shop to get some breakfast. During their stay at the coffee shop B.R. told Ms. Hilligoss she felt appellant was "coming on too strong." She admitted she did not verbally manifest this feeling to appellant. At that point she did not feel herself to be in any danger.

After finishing their meal the four rode back to the auction parking lot where B.R.'s and appellant's cars were parked. B.R. testified that on the way back to the auction appellant kissed her on the mouth. She testified she again did nothing to indicate disapproval, though she did not want him to do that. She also testified at one point appellant slipped his hand inside her blouse and placed it on her stomach. She responded by removing his hand and placing it on the armrest of the truck.

When they arrived at the parking lot, B.R. and appellant got out where her car was parked. Moriarity drove off immediately and B.R. and appellant talked for a while outside her car. B.R. testified appellant kissed her on the mouth at least twice during this time. She testified she still did not verbally manifest any disapproval of his acts and that she did not consider herself in any danger. John Moriarity came back to the site once to ask her if she was all right, to which she said yes.

After Moriarity drove off appellant began kissing B.R. again and put his hand between her legs on the outside of her blue jeans. She testified she removed his hand and he continued to put it back in the same place. She testified she didn't "shout" at him but that "I tried to make it perfectly clear that I didn't want him to do that." Finally, while they were still outside the car appellant put his hand inside her blue jeans

and underpants and inserted his finger in her vagina. She testified she tried to pull his hand out but couldn't. He then pushed her inside the car. She grabbed the steering wheel and honked the horn to attract attention but appellant knocked her hand off the horn. She then told him if he didn't stop she would have him arrested. While on top of B.R. and after unsuccessfully attempting to unfasten her belt, appellant drew out a pocketknife and exposed the blade.

While holding the knife so the blade was pointing at B.R.'s stomach he twice ordered her to remove her pants. She complied and he proceeded to perform cunnilingus on her. Then he climbed on top of her and had sexual intercourse with her. B.R. testified that during this time she was fearful of her life and did not physically resist him. She also testified she was crying during these acts and covered her face with her hands. Appellant left the scene quickly and B.R. drove directly to the police station and reported the incident.

Appellant took the witness stand and admitted the acts of oral sex and intercourse occurred but stated B.R. consented to the acts. He testified she never said anything to disapprove of his advances and that her physical responses were such that he believed she approved. He testified at the auction parking lot he did let her see his pocketknife but only when he used it to clean his fingernails and to clean the dirt out of the cracks in her steering wheel while they talked. He said he never threatened her with the blade. He testified that after kissing her for a while he proposed they engage in intercourse and she agreed. He testified she seemed to enjoy the whole episode and expressed a willingness to see him again the next time he was in town.

Appellant claims the evidence is insufficient to support the conviction for rape because there was no evidence of force or threats on his part nor was there any evidence of resistance on her part.

We do not weigh the evidence nor judge the credibility of witnesses. *Gilmore v. State,* (1981) Ind., 415 N.E.2d 70.

■ Appellant's claim that the evidence shows no force or threat of force is without merit. Appellant asserts in previous cases decided by this Court where an attacker was armed with a knife we have required actual verbal threats to accompany the showing of the knife to establish use or threat of force. Force or threat of force may be shown even without evidence of the attackers oral statement of intent or willingness to use a weapon and cause injury, if from the circumstances it is reasonable to infer the attacker was willing to do so. For example, in *Jenkins v. State,* (1978), 267 Ind. 543, 545, 372 N.E.2d 166, 167, we said: "Force need not be physical or violent but may be implied from the circumstances . . . ." *See also, Ives v. State,* (1981) Ind., 418 N.E.2d 220 (presence of force shown with attacker showing no weapon at all nor beating victim); *Zollatz v. State,* (1980) Ind., 412 N.E.2d 1200 (threat of force shown where attacker only threatened to "pull a knife" on the victim); *Stowers v. State,* (1977) 266 Ind. 403, 363 N.E.2d 978 (element of force need not be proven by use or display of weapon).

■ As to resistance, appellant asserts there is no evidence of resistance on B.R.'s part. In the first place, resistance is not an element of rape. *Stowers, supra.* However, in the case at bar, as above shown, the victim did, in fact, resist. This Court has recognized there is no requirement a woman scream or physically resist intercourse when she can reasonably believe that such resistance might endanger her life. *Dixon v. State,* (1976) 264 Ind. 651, 348 N.E.2d 401; *Ballard v. State,* (1979) Ind., 385 N.E.2d 1126.

B.R. testified she was afraid to resist when appellant showed her the knife and held it pointed at her stomach while twice commanding her to remove her jeans. We find there is sufficient evidence before the jury to support their finding that there was sufficient resistance to show the act was nonconsensual.

■ Appellant argues that consideration should be given to B.R.'s alleged lack of

resistance because of her conduct up to the time she and appellant were left alone in the parking lot. It is not our duty to pass judgment on the wisdom or lack thereof shown by B.R. in becoming involved in this situation in the first place. The fact remains the evidence is sufficient to show she submitted to intercourse with appellant because he threatened the use of force if she did not. Whatever appellant may have believed about B.R.'s feelings toward him up to the time he put his hand on the outside of her jeans, her words and her acts after that point should have left no doubt in his mind she did not want to have sexual relations with him. The essential elements of the crime of rape are present and shown by the evidence.

Appellant also argues the evidence is insufficient to support the conviction for confinement. He centers his argument on testimony he elicited from B.R. on cross-examination to the effect that she made no attempt to flee the car after she was forced inside.

I.C. § 35–42–3–3 [Burns 1979 Repl.] defines confinement, in relevant part, as follows:

"(a) A person who knowingly or intentionally:

"(1) confines another person without his consent . . . commits criminal confinement, a class D felony. However, the offense is . . . a class B felony if it is committed while armed with a deadly weapon . . . ."

I.C. § 35–42–3–1 [Burns 1979 Repl.] defines "confine" as "to substantially interfere with the liberty of another person."

There is ample evidence in this record from which the jury could find appellant interferred with B.R.'s liberty and that she did not consent to this interference.

■ Appellant claims the trial court erred in applying the Rape Shield statute, I.C. § 35–1–32.5–1 [Burns 1979 Repl.] to exclude certain evidence from consideration by the jury. Prior to trial the prosecutor made a Motion in Limine based on the statute to prohibit appellant from "stating, suggesting, arguing, testifying, or asking questions tending to suggest, by implication or otherwise, that the victim in this case, [B.R.], was engaged in extramarital intercourse, affairs, or activities. . . ." This motion was granted by the trial court.

When appellant attempted to ask B.R. a question about her faithfulness to her husband, the trial court enforced the statute by prohibiting any such questioning. The jury was admonished not to consider the question asked nor its prospective answer in their deliberations. When B.R.'s husband was later called to the stand, on cross-examination, he testified that to his knowledge she had never concealed from him any information that would be important to their relationship. Finally, at the opening of his case appellant made an offer to prove B.R. had been unfaithful to her husband in the past, allegedly for the purpose of refuting her husband's assertion as to her fidelity. This offer was in the form of a deposition of B.R. taken by defense counsel prior to trial.

Appellant contends the enforcement of the Motion in Limine and application of I.C. § 35–1–32.5–1 denied him due process of law. He argues the State "opened the door" by "plac[ing] [B.R.'s] character in evidence when it examined her husband concerning her fidelity and trustworthiness." He contends the State was allowed to put in evidence B.R. was of good moral character, but then he was prohibited from using the deposition to refute the assertion and cast doubt on her credibility as a witness. He concludes the Rape Shield statute was unconstitutionally applied to him and the conviction must be reversed.

Appellant misstates the record in a crucial way. He ignores the fact that comment made by B.R.'s husband as to her fidelity was made in response to appellant's cross-examination. Thus, the State did not "open the door" and did not in any way place her character in evidence. Nor did the testimony given by B.R. in the deposition relate to her credibility, as at no point in the trial did she assert she had been faithful to her husband throughout her

marriage. As noted, the only time she was asked such a question at trial, an objection was made, no answer to the question was given, and the jury was admonished not to consider the question or its prospective answer.

■ This case is a classic example of one of which the Rape Shield statute directly applies and operates for its recognized purpose. We have identified that purpose as being the shielding of the victims of sex crimes from a general inquiry into their prior sexual conduct. *Moore v. State,* (1979) Ind., 393 N.E.2d 175. That purpose is served in this case by excluding from the jury's consideration the irrelevant evidence of B.R.'s prior sexual conduct. If appellant was harmed by the jury's hearing and misunderstanding of B.R.'s husband's testimony, he bears the responsibility himself, as it was he who asked the question, not the State. There is no error with regard to this issue.

Appellant claims the trial court erred in sentencing him on both convictions. He argues the confinement charge is included in the rape charge, and, therefore, under I.C. § 35–4.1–4–6 [Burns 1979 Repl.] judgment and sentence may be entered against him only on one of the convictions.

We decided this question contrary to appellant's contention in *Elmore v. State,* (1978) 269 Ind. 532, 382 N.E.2d 893.

■ Appellant claims the trial court erred in admitting over his objection hearsay testimony. This testimony was elicited from State's witnesses Renner, Calhoun, and Sumner. These three witnesses testified as to statements made to them by B.R. both before and after the offense was committed. The subject matter of these statements had already been addressed by B.R. in the direct and cross-examination. The record indicates the trial court admitted their testimony under the so-called "*Patterson* rule," which allows admission of the prior out-of-court statements of a declarant present and available for cross-examination as substantive and not merely impeaching evidence. *See, Patterson v. State,* (1975) 263 Ind. 55, 324 N.E.2d 482.

Appellant points out in the later case of *Samuels v. State,* (1978) 267 Ind. 676, 372 N.E.2d 1186, this Court indicated the *Patterson* rule had been misapplied in some cases. We said:

"It appears the rule drawn from *Patterson* may well be in need of some reconsideration. To the extent that it has, on some occasions, been used to support the admission of out-of-court statements *as a mere substitute for available in court testimony,* it has been misapplied." (Emphasis added.) *Id.* at 679, 372 N.E.2d at 1187.

Later in *Stone v. State,* (1978) 268 Ind. 672, 377 N.E.2d 1372, we acknowledged the continued periodic abuse of the *Patterson* rule. We pointed out the *Samuels* case was intended to "[warn] that the use of prior statements by a trial witness by the proponent of the witness *in lieu of available and direct testimony of such witness* will not longer be tolerated." (Emphasis added.) *Id.* at 678, 377 N.E.2d at 1375.

Appellant also cites *Flewallen v. State,* (1977) 267 Ind. 90, 368 N.E.2d 239. In that case Justice DeBruler dissented to the application of the *Patterson* rule. In that case four witnesses were called to the witness stand by the State only for the purpose of authenticating their prior statements, which were then read to the jury as substantive evidence before any cross-examination of the witnesses occurred. Justice DeBruler dissented on the grounds the *Patterson* rule should not be used to permit the State to prove its case solely through the use of prior statements of potential witnesses and avoid doing so "through the testimony of sworn witnesses given in open court where the trier of fact can observe their demeanor and where cross-examination takes place more or less contemporaneously with the testimony's reception." *Id.* at 98, 368 N.E.2d at 243 (DeBruler, J., dissenting).

Appellant now concludes that this Court's decisions in *Samuels, supra,* and *Stone, supra,* and from Justice DeBruler's dissent in *Flewallen, supra,* that abuse of the *Patterson* rule occurs when it is used to admit as

substantive evidence the prior statement of a witness who is not a "turncoat witness" (one whose in court testimony is in conflict with his prior statement). He contends the witness here was not a turncoat witness and therefore the State abused the *Patterson* rule by using it to permit a retelling of her story through the admission of other witness testimony as to her prior statements concerning the facts at issue.

Appellant is not correct in identifying the problem we ourselves have seen with regard to the *Patterson* rule. As can be seen by reading the cases he cites, including Justice DeBruler's dissent in *Flewallen, supra,* the key question in determining whether or not an abuse of the *Patterson* rule has occurred is whether the State has submitted evidence as to the relevant factual events in the case by directly examining (and thereby making him available for cross-examination) the witness-declarant about those facts. What we will not permit is for the State to put in substantive evidence of the witness-declarant's version of the facts solely through the admission of the witness' prior statement under the pretext of the *Patterson* rule. At some point the State must put the declarant of the prior statement on the witness stand and elicit direct testimony as to the facts at issue.

We hold there was no improper application of the *Patterson* rule here. The declarant of the prior statements, the victim, had already withstood both direct and cross-examination. The content of her prior statements, admitted through the three witnesses' recitations of her statements, related to those same facts to which she herself had already testified and about which she was or could have been cross-examined. Thus, the *Patterson* rule was not used to admit substantive evidence "*in lieu of* available and direct testimony of [the] witness." (Emphasis added.) *Stone, supra,* 268 Ind. at 678, 377 N.E.2d at 1375. There was no violation of the hearsay rule.

The trial court is in all things affirmed.

HUNTER, DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs in result.