**Kevin WILSON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 18A02–8806–CR–252.

Court of Appeals of Indiana, Second District.

April 17, 1989.

John S. Brumfield, Special Public Defender, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Kevin E. Wilson appeals his conviction of rape, a class B felony.[1]

We affirm.

## FACTS

Wilson was convicted of raping M.G., a sixteen (16) year old girl, on August 13, 1986.

**1.** IC 35–42–4–1(a)(1) (1988).

The evidence most favorable to the conviction is that Wilson and others forcibly engaged in sexual intercourse with M.G. on the evening of August 13, 1986.

Wilson gave a statement to police early in the morning of August 14, 1986, in which he admitted going to a house in the company of three men and M.G. at about 5:30 p.m. on August 13, 1986. He stated that during the evening the other three men "started pushing and shoving around on [M.G.]," (Record at 1037) and engaged in intercourse with her. Wilson asserted he did not participate in these events. Finally, he claimed M.G. and the other three men were still at the house when he left at approximately 7:00 p.m. At trial, Wilson again denied he engaged in sexual intercourse with M.G. on August 13, 1986.

## ISSUES

On appeal, Wilson alleges the trial court erred in:

1. limiting *voir dire;*

2. failing to swear prospective jurors from another court's jury venire before their voir dire proceeded;

3. allowing testimony that the crime occurred at a time other than that described in the State's answer to his notice of alibi;

4. ruling upon objections to questions propounded to Officer Hittson;

5. denying him a hearing on his motion to suppress his out-of-court statement;

6. admitting hearsay evidence of conversations between M.G. and a nurse;

7. admitting a copy of a hospital record; and

8. denying him the opportunity to make an offer of proof.

## DECISION

### I.

Wilson claims the trial court erred when it limited both him and the State to forty-five minutes for their initial *voir dire* and twenty minutes thereafter. Specifically, Wilson complains that the allotted time was

insufficient to explore possible racial prejudice among the potential jurors.

■  A trial court possesses broad discretion to regulate the form and substance of *voir dire. Rutledge v. State* (1988), Ind., 525 N.E.2d 326, 328; *Ashby v. State* (1985), Ind., 486 N.E.2d 469, 473. To establish reversible error, an appellant must show that an abuse of this discretion rendered a fair trial impossible. *Rutledge* at 328. A time limitation itself does not constitute an abuse of discretion. *Whitehead v. State* (1987), Ind., 511 N.E.2d 284 (total of twenty-five (25) minutes), *cert. denied* (1988), — U.S. ——, 108 S.Ct. 761, 98 L.Ed.2d 773.

■  Here, the record reveals the trial court explained the criminal justice system and its concepts to the prospective jurors and examined them generally as to their qualifications to serve as jurors prior to releasing them to the parties for their respective examinations. Consequently, in theory, Wilson had the use of his entire allotted time to explore areas of special concern. Therefore, because Wilson gives us nothing to substantiate his claim that his allotted time was insufficient to explore possible racial prejudice among the prospective jurors, other than his bald assertions to that effect, he fails to establish error in the trial court's limitation. *Gossmeyer v. State* (1985), Ind., 482 N.E.2d 239, 241.

## II.

Wilson claims the trial court erred by seating as prospective jurors those individuals who had been called but not selected for jury duty that day in Delaware Superior Court I. When the venire for Delaware Superior Court II (the court in which Wilson's cause was to be tried) was exhausted, venire persons who had been excused from Superior I were seated and examined; three were eventually selected and sworn as jurors in this cause.

The applicable statutes provide:

Whenever it becomes necessary to summon a juror from the bystanders, the court shall instruct the sheriff not to call a person as a juror who has either solicited or been recommended for the position. The court may, of its own motion or at the request of either party, direct the sheriff to summon the talesmen from persons outside the courthouse.

IC 35–37–1–7 (1988).

[T]he bailiff of such court, or sheriff, shall go outside the courthouse and summon reliable and reputable citizens for such jury service.

IC 34–2–19–1 (1988).

■  Minor irregularities in compliance with the statutes directing selection and calling of jurors do not constitute reversible error. *See Owen v. State* (1979), 272 Ind. 122, 125, 396 N.E.2d 376, 379. This is the type of irregularity about which Wilson complains.

The purpose of the "outside the courthouse" requirement is to prevent persons from indirectly soliciting service as a juror by placing themselves in and about the courthouse in a prominent position to be summoned for jury service. In addition, the requirement avoids "professional" jurors composed of readily accessible courthouse employees and "hangers-on." Neither of these purposes is violated by securing prospective jurors from those individuals who have been drawn for jury service in another court. Further, Wilson has failed to state any claim or make any showing how he was prejudiced or harmed by the action of the trial court. *Deig v. Morehead* (1887), 110 Ind. 451, 457, 11 N.E. 458, 461. Therefore, there is no reversible error.

■  Wilson also claims the trial court erred in failing to administer an oath to the venire persons secured from Superior I prior to their *voir dire.* Wilson does not cite any authority requiring the administration of an oath before the *voir dire* of prospective jurors. Indeed he acknowledges the statutory mandate for administering an oath to a prospective juror applies only when "a person called as a juror states that he has formed or expressed an opinion as to the guilt or innocence of the defendant...." IC 35–37–1–5 (1988). Then, in that event, "the court or the parties shall

proceed to examine the juror *on oath* as to the grounds of his opinion...." *Id.* (emphasis added). This circumstance did not occur in this cause. Therefore, the oath was not statutorily required. However, the practice of administering an oath to all prospective jurors is a well-established practice in this state, which we hereby judicially mandate for the compulsion the solemnity of the oath places upon prospective jurors to truthfully answer questions touching upon their competency to serve as jurors. However, its omission here is harmless. Wilson fails to make any showing that he was prejudiced by the omission of the oath.

### III.

Wilson claims the trial court erred in overruling his objection to M.G.'s testimony concerning the alleged rape for the reason she claimed the incident occurred around 4:30 or 5:00 p.m.

Wilson filed a notice of alibi on September 18, 1986, pursuant to IC 35-36-4-1 *et seq.* (1988).[2] In its answer, the State averred that it intended to prove the offense took place "at approximately 7:30 p.m." on August 13, 1986. Record at 75. At trial the victim testified:

Q. [State] All right what happened next?

[Defense Counsel]: Preliminary question. What time is this young lady?

A. I don't know approximately the time. I didn't have a watch.

[Defense Counsel]: Well can you give me an approximate time?

A. 4:30, 5:00, I don't know.

[Defense Counsel]: 4:30 or 5:00. Thank you.

Q. [State] Are you sure of what time it was?

A. No.

Q. [State] Do you have any idea how far off you could be in your time?

A. No.

Record at 757.

The testimony of other State's witnesses was reasonably consistent with the State's answer. They testified the crime occurred around 7:00 to 8:00 p.m.; around 7:30 p.m.; and after 6:00 p.m. In turn, Wilson offered evidence he was at his home by 7:10 p.m.

■ The purpose of the alibi statute is to provide both the prosecution and the defense with an opportunity to prepare their respective cases for trial. *Tolbert v. State* (1984), Ind., 459 N.E.2d 1189, 1191. It is not intended "to compel the exclusion of evidence or mandate retrials for purely technical errors." *Baxter v. State* (1988), Ind., 522 N.E.2d 362, 369 (citing *Williams v. State* (1980), 273 Ind. 547, 550, 406 N.E. 2d 241, 243). The trial court clearly has discretion to order a continuance as the sole remedy for a violation of the statute. *Williams v. State* (1985), Ind., 478 N.E.2d 47, 49 (where testimony of State's witnesses on cross-examination differed from answer to alibi notice by one day, "defense was entitled to no more than a reasonable continuance to expand its alibi coverage"); *Owens v. State* (1975), 263 Ind. 487, 499, 333 N.E.2d 745, 751 (continuance is appropriate remedy); *Reed v. State* (1963), 243 Ind. 544, 551, 188 N.E.2d 533, 536 (continuance, not exclusion, is proper remedy); *cf. Wallace v. State* (1981), Ind., 426 N.E.2d 34, 40 (even for continuance, defendant must show prejudice). Here, Wilson did not request a continuance. *Cf. Tolbert*, 459 N.E.2d at 1191 (defendant rejected offer of continuance; no reversible error); *Willis v. State* (1980), Ind.App., 411 N.E.2d 696, 698 (absent prejudice to defendant, refusal of offered continuance waived any error). The only prejudice Wilson alleges is surprise, although this was Wilson's second trial on the same charge. In his case, as in *Williams*, "[w]here a criminal trial has been litigated once before, there is little reason to think that anyone was surprised by the evidence presented at retrial." *Williams*, 273 Ind. at 550, 406 N.E.

---

**2.** Wilson's notice of alibi accounted for his whereabouts between 7:00 p.m. and 8:00 p.m. on August 13, 1986, and requested the State to

"specify the date and time of the offense." Record at 69.

2d at 244 (citing *Monserrate v. State* (1976), 265 Ind. 153, 160, 352 N.E.2d 721, 725). Indeed, Wilson fails to support his assertion of surprise with any specifics. Further, the State's answer was itself equivocal: *approximately* 7:30 p.m. The trial court did not err in overruling Wilson's objections to M.G.'s testimony.

#### IV.

Wilson's next asserted error is directed to the trial court's rulings on objections made by him and the State during the State's direct examination of its witness, Officer Hittson.

■ Wilson objected to the following questions propounded to Hittson by the State:

Q. Did you make any promises or threats?

A. No.

MR. J. BRUMFIELD: I'll object to that, two questions included in one and what is a threat? He can tell him what he said to him, Judge, and what he didn't say.

THE COURT: Well, I'm going to overrule the objection.

Q. Did you make any promise to him?

A. No, Sir.

Q. Did you make any threats to him?

A. No, Sir.

MR. J. BRUMFIELD: Same, would continue objection on that, Judge.

THE COURT: Show your continuing objection.

Q. Did you coerce him in anyway? [sic]

MR. J. BRUMFIELD: Same objection, Judge. Coerced, ooh.

* * * * * *

THE COURT: Objection noted and overruled.

Record at 938. Wilson did not preserve this issue for review. He failed to make either a timely objection or to move to strike the answer for the purpose of making an objection.[3] *Kirby v. State* (1985), Ind., 481 N.E.2d 372, 375.

Wilson also claims the trial court erroneously sustained the State's objection to a preliminary question he propounded to Officer Hittson following the questions concerning promises and threats made to Wilson to give a statement. As a preliminary question defense counsel first asked:

[Q.] And did you tell [Wilson] anytime prior to his signing that thing, whatever it is over here, that his uncle, Sonny Burkes, told him to sign it?

A. No.

Record at 939. Then counsel asked, "Who is Sonny Burkes?" *Id.* The State's objection was sustained. On appeal, Wilson's argument to substantiate his claim of error is "This soliloquy caused substantial injury." This argument waives the issue. In any event, counsel told the jury who Sonny Burkes was in his previous question: Sonny Burkes is Wilson's uncle.

#### V.

■ Immediately after the exchange discussed in Issue IV, *supra,* Wilson moved to suppress the statement he gave to the police. The court overruled his motion. He argues that the court's refusal to grant him a hearing on the motion before the statement was admitted violated his constitutional rights. As the State observes, Wilson fails to support this contention with authority, as required by Indiana Rules of Procedure, Appellate Rule 8.3(A)(7). However, without regard to the State's claim of waiver, Wilson's argument fails. Wilson could only have been prejudiced by the lack of a suppression hearing if the statement was improperly admitted. Significantly, Wilson does not contend the trial court erred when it subsequently admitted Wilson's statement. In fact, Wilson

---

**3.** In any event, reversible error could not exist because Hittson did not respond to the question concerning "coercion" and Hittson's testimony is merely cumulative of the statement signed by Wilson, received in evidence, which stated his statement was made "without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever." Record at 1037. Finally, Wilson presents nothing to support his allegation that he sustained substantial injury from the questions and answers.

did not object to the statement when it was offered into evidence during the testimony of a subsequent witness.

There is no reversible error in the trial court's denial of a suppression hearing.

### VI.

Wilson argues that the court erred in permitting prosecution witness Bonnie Sotdorus, an emergency room nurse who tended M.G. on the evening of the rape, to testify to the content of M.G.'s conversation with her. He contends that Sotdorus's testimony was inadmissible hearsay. Although M.G. was available for cross-examination, Wilson argues this case falls within the *Lewis* limitation on the use of *Patterson* evidence because M.G. did not testify concerning the conversation in question. *Lewis v. State* (1982), Ind., 440 N.E.2d 1125, *cert. denied* (1983), 461 U.S. 915, 103 S.Ct. 1895, 77 L.Ed.2d 284; *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482. *Lewis* holds that an abuse of the *Patterson* rule occurs when a party "put[s] in substantive evidence of the witness—declarants version of the facts solely through the admission of the witness' prior statements...." *Lewis*, 440 N.E.2d at 1130. The party wishing to use the out-of-court statement as substantive evidence must, at some point, "put the declarant of the prior statement on the witness stand and elicit direct testimony as to the facts at issue." *Id.*

The State concedes the statement was hearsay but argues M.G.'s testimony relating the rape is sufficient to avoid the problem which *Lewis* addresses. The State argues alternatively that M.G.'s statement, related by Sotdorus, is an excited utterance, and, therefore, is admissible under that exception to the hearsay rule.

■ The State's excited utterance argument is not convincing. A statement made by a rape victim to a nurse in a hospital over an hour after the rape is not *per se* an excited utterance.

■ However, we agree with the State's *Lewis* argument. Sotdorus's recitation of M.G.'s out-of-court statement consisted of one sentence ("[M.G.] told me that she had been beaten and raped by four black men and that she was very afraid at that time," Record at 1051). Earlier in the trial, M.G. gave the same substantive testimony in much greater detail. Therefore, in compliance with *Lewis*, the State elicited the same testimony directly from M.G. prior to the admission of Sotdorus's testimony. *Lewis*, 440 N.E.2d at 1130. Accordingly, the trial court did not err in admitting the out-of-court statement over Wilson's hearsay objection.

### VII.

■ Wilson argues next that the trial court erred in permitting the State to introduce into evidence a copy of an application for sex crime victim benefits completed at the hospital by nurse Sotdorus and signed by M.G. and her mother. The copy was part of M.G.'s hospital record. At trial, Wilson objected on the ground the offered exhibit was a copy and he had not had an opportunity to inspect the original. There is no error in admission of the copy. By statute, photographic copies of business records are admissible. IC 34-3-15-1,-2 (1988). The trial court did not err in overruling Wilson's objection.[4]

### VIII.

Finally, Wilson argues that the trial court erred when it refused to permit him to make an offer of proof concerning testimony of defense witness Robert Gulley III, intended to impeach M.G. In fact, the court did permit Wilson to make an offer of proof, though the testimony was ultimately

---

4. We also note that none of the authorities Wilson cites supports the argument he makes: none involve photographic copies, and all were decided in favor of admissibility. Further, his allegation of prejudice is entirely speculative: he simply cites a law school professor's suggestion that "different colored inks do not copy." Appellant's Brief at 44. All of the relevant blanks on the form appear to be filled in; it would appear highly unlikely that any "different colored inks" failed to reproduce on the photocopy, and Wilson makes no such claim.

excluded. Wilson's argument is ground-less.[5]

Judgment affirmed.

SULLIVAN and MILLER, JJ., concur.

---

**5.** Wilson does not argue on appeal that exclusion of the impeachment testimony was erroneous, though he asserted this in his motion to

correct error. *Compare* Appellant's Brief at 29, 44–47 *with* Record at 4–5.