Robert Frank BRYANT, Jr., Appellant,
(Defendant below)

v.

STATE of Indiana, Appellee.

No. 34S02–9412–CR–1222.

Supreme Court of Indiana.

Dec. 16, 1994.

John C. Wood, Howard County Deputy Public Defender, Kokomo, for appellant.

Pamela Carter, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

After a bench trial in Howard Circuit Court, Robert Bryant was convicted of rape, a Class B felony. He was sentenced to a six year term of imprisonment. He was additionally sentenced to five hundred hours of community service, assessed a fine of two thousand five hundred dollars, and ordered to enroll in a counseling program relating to sexual conduct. The judge suspended the sentence of imprisonment and placed Bryant on four years probation.

Bryant appealed his conviction. In a memorandum decision, a divided panel of the Court of Appeals reversed Bryant's conviction on the ground that the evidence was insufficient. *Bryant v. State* (1994), Ind. App., 629 N.E.2d 285 (mem.). The State has petitioned this Court to transfer the decision of the Court of Appeals, and we now grant transfer to discuss whether the evidence presented at trial was sufficient to support Bryant's conviction for rape.

### *Facts*

The facts supporting the trial court's judgment show that on March 27, 1992, S.W. and two other women went to the mobile home

where Bryant was living with a friend. Except for one of the women, who was eight months pregnant at the time, all drank considerable amounts of alcohol in the short span of a couple of hours. S.W. drank so much that she became ill and went into the bathroom to throw up.

After S.W. had been in the bathroom throwing up for quite some time, Bryant came in. As S.W. was kneeling on the floor with her head above the toilet, Bryant began pulling her hair back to keep it out of the toilet. S.W. had taken her shirt and bra off, and Bryant also began rubbing her back, shoulders, and breasts. Bryant then pulled down S.W.'s pants and underwear and had sexual intercourse with her. S.W. did not explicitly consent to intercourse, but she also never asked Bryant to stop or indicate unwillingness in any other way.

When Stacy Corbett entered the bathroom some time later, S.W. began to tell her what had happened. Bryant promptly left the trailer.

S.W. became angry, hysterical, and inconsolable as she related the incident to the others. After S.W. had been taken to her apartment, she became so hysterical and sick that an ambulance was called to take her to the hospital.

The examining doctor observed that S.W. had sustained abrasions and contusions on her kneecaps, thighs, and face. A pelvic examination revealed two abrasions on the floor of S.W.'s vagina.

Bryant was arrested and interviewed. In his signed statement he admitted that he had had intercourse with S.W.

### Discussion

Indiana Code § 35-42-4-1 (1993) defines the crime of rape and provides in relevant part: "A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when ... the other person is compelled by force or imminent threat of force ... commits rape, a Class B felony."[1] Bryant's sole argument on appeal was that there was no evidence in the record that he used force or the threat of force to compel S.W. to have intercourse.

■ When we review a claim that the evidence was insufficient to support a criminal conviction, we consider only the evidence that supports the verdict and we draw all reasonable inferences from that evidence. *Wear v. State* (1992), Ind., 593 N.E.2d 1179, 1179. We do not reweigh the evidence and we do not attempt to judge the credibility of witnesses. *Id.; Stewart v. State* (1988), Ind., 521 N.E.2d 675, 677. We will uphold a conviction if the record supports it with substantial evidence of probative value from which a trier of fact could reasonably infer guilt beyond a reasonable doubt. *Garrett v. State* (1993), Ind., 602 N.E.2d 139, 142, *reh'g denied.*

■ We have said that the force necessary to sustain a rape conviction need not be physical, but that it may be inferred from the circumstances. *Jones v. State* (1992), Ind., 589 N.E.2d 241, 242–43; *Smith v. State* (1986), Ind., 500 N.E.2d 190, 192; *Jenkins v. State* (1978), 267 Ind. 543, 545, 372 N.E.2d 166, 167. In *Lewis v. State* (1982), Ind., 440 N.E.2d 1125, *cert. denied*, 461 U.S. 915, 103 S.Ct. 1895, 77 L.Ed.2d 284 (1983), upon which *Jones* in part relied, Chief Justice Givan wrote that "[f]orce or the threat of force may be shown even without evidence of the attacker's oral statements of intent or willingness to use a weapon and cause injury if from the circumstances it is reasonable to

---

1. Indiana Code § 35-42-4-1 provides in full:
   A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:
   (1) the other person is compelled by force or imminent threat of force;
   (2) the other person is unaware that the sexual intercourse is occurring; or
   (3) the other person is so mentally disabled or deficient that consent to sexual intercourse cannot be given;

   commits rape, a Class B felony. However, the offense is a Class A felony if it is committed by using or threatening the use of deadly force, if it is committed while armed with a deadly weapon, or if it results in serious bodily injury to a person other than a defendant. As will be discussed below, the information charged Bryant under subsection (1), alleging force or imminent threat of force. Given S.W.'s illness and intoxication, we can envision a charge under subsection (2) as well.

infer the attacker was willing to do so." *Lewis*, 440 N.E.2d at 1127.

These cases, however, apply to instances where only a threat of force is alleged. The majority of the Court of Appeals panel may well be correct that there was "no evidence that [S.W.] was afraid because Bryant had forced her to do anything or threatened her, or that her fear was reasonable." Memorandum decision at 4. This conclusion, however, only deals with the issue of whether Bryant compelled S.W. to have intercourse by threat of force.

The information charged Bryant with rape either by force or the imminent threat of force. And indeed, at trial it was the State's theory of the case that Bryant employed the compulsion of *actual* force. In its findings, the trial court also found the actual use of force.

■ The evidence showed that Bryant took down S.W.'s pants and underwear. It also showed that before the attack S.W.'s pants were intact while afterwards they were ripped and stained. S.W. also sustained bruises to her kneecaps, thighs, and face. There were two abrasions on the floor of her vagina.

One of the women present at the "party" testified about S.W.'s condition after the intercourse:

Q: And can you describe what condition she was in at the time you saw her in her apartment later that evening?

A: She was like I'd never seen her before. She had torn her clothes off of her body. She kept, she kept stating that she couldn't believe that it happened, she couldn't believe that he did that to her. At several, there were several times she hyperventilated. CPR had to be performed on her because she stopped breathing.

. . . .

Q: Earlier when I asked you to describe how she appeared you said she appeared like you'd never seen before. Can you explain how this appearance was out of the ordinary to you?

A: Well, she was—, from what I knew of her was always a very controlled, I mean she never, she didn't like to let people see her really upset or crying and she was crying. She was asking for her mother. She couldn't—I tried to have her tell me what was wrong. She couldn't, actually she couldn't keep her breath long enough to get our what was the matter with her. She was just very, very upset and I'd never seen her that way before.

From the numerous physical facts in evidence, a reasonable trier of fact could have concluded beyond a reasonable doubt that Bryant used actual force to compel S.W.'s submission. This is especially true in view of S.W.'s weakened condition at the time.

■ Where force is shown and the issue of whether the victim consented or had a duty to resist could be an issue for the trier of fact to determine, the State need only prove that the victim did not consent. *Hicks v. State* (1989), Ind., 536 N.E.2d 496, 500; *Woods v. State* (1992), Ind.App., 587 N.E.2d 718, 722. Because the evidence showed that S.W. was extremely upset afterwards, a reasonable trier of fact could also have concluded beyond a reasonable doubt that S.W. did not consent to Bryant's use of force. *Hennings v. State* (1989), Ind., 532 N.E.2d 614, 615. We conclude, therefore, that the evidence was sufficient to support Bryant's conviction for rape.

### Conclusion

Accordingly, we now grant transfer and vacate the opinion of the Court of Appeals. Ind.Appellate Rule 11(B)(3). Bryant's conviction for rape is affirmed.

SHEPARD, C.J., and GIVAN, J., concur.

DeBRULER, J., dissents with separate opinion, in which DICKSON, J., concurs.

DeBRULER, Justice, dissenting.

S.W., the alleged victim, stated in a medical interview following the incident that no force was used and she repeated this claim under oath at trial. The majority of this Court nevertheless concludes that she was compelled by the threat of imminent force. I am unaware of any theory of compulsion

such that one can be compelled by something without knowing that one is being compelled.

All the evidence, including the testimony of S.W. at trial, showed that her pants were already down when Appellant entered the bathroom. The pants were not "intact" when she arrived, but already had patches on the knees. The evidence at trial only indicated that the patches had come loose and testimony indicated that the victim had torn them herself. There was no evidence, not even an allegation, that Appellant had caused the bruises. The source of the abrasions on the floor of the vagina may well have been the result of the consensual sex which S.W. had with her boyfriend at 10:00 a.m. the day of the alleged crime.

The physical facts were hardly numerous and the claim of actual force remains problematic. The victim testified that appellant used no force. There was no other testimony regarding the use of force. It is possible that the victim was *incapable* of consenting because of her weakened condition; however, the prosecutor did not bring this charge on that theory and it is not our place to uphold convictions where the State may have improperly charged a defendant.

I believe that Judges Shields and Barteau were correct when they concluded for the Court of Appeals that the evidence was simply insufficient to convict.

DICKSON, J., concurs.