**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 12 2013, 6:04 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANDREW B. ARNETT**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DARREN L. BUNCH,  )
　　　　　　　　　　　　　　　　　)
　　Appellant-Defendant,  )
　　　　　　　　　　　　　　　　　)
　　　　vs.  )　　　No. 73A01-1301-CR-15
　　　　　　　　　　　　　　　　　)
STATE OF INDIANA,  )
　　　　　　　　　　　　　　　　　)
　　Appellee-Plaintiff.  )

APPEAL FROM THE SHELBY SUPERIOR COURT
The Honorable Jack A. Tandy, Judge
Cause No. 73D01-1006-FB-12

**September 12, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Darren L. Bunch ("Bunch") appeals his conviction of rape[1] as a Class B felony. Bunch raises two issues for our review, which we restate as follows:

I.       Whether the evidence was sufficient to sustain his conviction; and

II.      Whether his sentence was appropriate in light of his character and the nature of the offense.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the evening of April 24, 2010, Kimberly Lane ("Lane") drove to J.G.'s parents' home in order to pick up J.G. and their mutual friend Terri Ward ("Ward"). The women went to one bar for a short time, then traveled to Bo Jack's, a bar in downtown Franklin. Because she was driving, Kimberly had only two drinks throughout the evening, but J.G. and Ward consumed a considerable amount.

While the group was at Bo Jack's, Bunch approached Lane multiple times. He repeatedly offered to purchase Lane a drink, but she denied his offers. Bunch then approached J.G., offered her a drink, and J.G. accepted the offer. Due to her alcohol consumption, J.G. does not recall certain portions of the evening, and does not remember meeting Bunch.

At one point in the evening, Bunch attempted to kiss J.G., who had exclusively dated women for the previous twelve years. When this occurred, Lane decided it was time for the women to leave and began assisting J.G. and Ward into the car. Bunch tried to enter the vehicle with them, but Lane told him to leave them alone. Lane began

---

[1] *See* Ind. Code § 35-42-4-1.

2

driving J.G. and Ward back to J.G.'s parents' home. During the car ride, which took place around 4:00 a.m. on April 25, 2010, Bunch and J.G. exchanged phone calls. Bunch told the women that he was having a party at his house with "a lot of people." *Tr.* at 74, 83. Bunch drove over to pick up J.G. and Ward. When they arrived at his residence, there was no one else present.

J.G. remembers being at Bunch's residence and that Ward wanted cigarettes. J.G. and Bunch then went to purchase cigarettes at a gas station. When Bunch and J.G. returned, Bunch parked his vehicle where Ward could not see inside of it, and asked J.G. for a kiss. She complied, although she was frightened at the time. J.G. next remembers being in the backseat of Bunch's vehicle, but she does not recall who entered the backseat first.

Bunch unbuttoned J.G.'s pants and pulled her pants and underwear down. J.G. told Bunch "no," was crying, and was afraid that Bunch would harm her. *Tr.* at 43-44. Bunch then inserted his penis into J.G.'s vagina and ejaculated. J.G. cried throughout the intercourse and repeatedly said "No!" "Please stop!" and "Get off me!" *Tr.* at 45-46. J.G. did not hit Bunch because she was scared. Bunch was on top of J.G. throughout the entire encounter.

J.G. ran from the vehicle into Bunch's home, and told Ward that Bunch had raped her. Ward called Lane to pick up her and J.G. Bunch gave the two women Vicodin, and after approximately twenty minutes, drove the women to meet Lane at a grocery store parking lot.

3

When Ward and J.G. returned to J.G.'s parents' home, Ward told J.G.'s parents what happened, and police were called. J.G. spoke with the police and then went to the hospital where she underwent a sexual assault examination. The examiner found redness on parts of J.G.'s vagina and mild abrasions that were common in non-consensual sexual encounters.

Bunch agreed to undergo a polygraph test and waived challenge to the admissibility of the test. Prior to the test, Bunch informed the polygraph examiner that he and J.G. had consensual sex, and that J.G. had only said "[d]on't do it!" prior to his ejaculation. *Tr.* at 118. During the test, the examiner asked Bunch whether J.G. ever communicated that she did not want to have sex before his penis was inside her vagina. The examiner also asked whether, before his penis entered J.G.'s vagina, J.G. ever said no. Bunch answered negatively to both questions; however the polygraph test showed that Bunch failed to tell the truth regarding the relevant questions.

When the examiner confronted Bunch with the test results, Bunch admitted that J.G. "said no approximately two to three times prior to him having intercourse." *Id.* at 121. Bunch also admitted to lying when he stated that J.G. was on top of him during the intercourse. He further told the examiner that he took the polygraph because he was "tryin' to beat it." *Id.* at 122. Bunch exhibited remorse, and the examiner suggested that he write an apology letter to J.G. In that letter, Bunch wrote: "You did tell me no but I didn't believe you truley [sic] ment [sic] it because I thought you wanted to have sex with me." *State's Ex.* 6. Bunch continued: "Please try to understand that it was late and we

4

were drinking and very exited [sic] in the heat of moment [sic] and I made a terrible decision by not listening to you." *Id.*

The State charged Bunch with rape as a Class B felony. Bunch waived his right to a trial by jury, and the trial court scheduled a bench trial for May 23, 2011. Bunch failed to appear for his trial, and Bunch's counsel requested a continuance. The trial court denied the continuance and proceeded to try Bunch in absentia. The trial court found Bunch guilty.

After a bounty hunter captured Bunch, the trial court conducted a sentencing hearing on December 16, 2011. At the hearing, the prosecutor asked if Bunch could comprehend how the present matter was difficult for J.G., and Bunch stated: "I really don't see how." *Tr.* at 197. Bunch also commented: "I didn't screw up her life . . . She was screwed up from the get go." *Id.* at 198. He further noted that the victim "was no saint." *Id.*

In sentencing Bunch, the trial court found his failure to appear at trial as an aggravating circumstance. As a mitigating factor, the trial court found that J.G. "facilitated the event that led to [Bunch's] action," in that she "facilitated or put herself in a position that she became a victim." *Id.* at 207-08. The trial court then sentenced Bunch to twelve years in the Indiana Department of Correction. Bunch now appeals.

**DISCUSSION AND DECISION**

Bunch raises two arguments. First, he challenges the sufficiency of the evidence to sustain his rape conviction, contending that the State did not sufficiently establish the

5

essential element of force. Next, Bunch argues that his sentence was inappropriate in light of the nature of the offense and his character.

## I. Sufficiency of the Evidence

In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or judge the credibility of the witness. *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005). When we are confronted with conflicting evidence, we must consider it most favorably to the conviction. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). We must affirm if the probative evidence and reasonable inferences drawn from that evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).

Indiana Code section 35-42-4-1 provides in relevant part that a person commits Class B felony rape when the victim was "compelled by force or imminent threat of force." Ind. Code § 35-42-4-1. However, "the force necessary to sustain a rape conviction need not be physical . . . it may be inferred from the circumstances." *Bryant v. State*, 644 N.E.2d 859, 860 (Ind. 1994). It is from the victim's perspective, not the assailant's, from which the presence or absence of forceful compulsion is to be determined. *Tobias v. State*, 666 N.E.2d 68, 72 (Ind. 1996). The test is a subjective one, which looks to the victim's perception of the circumstances surrounding the incident. *Id.* "Thus, the issue is whether the victim perceived the aggressor's force or imminent threat of force as compelling her compliance." *Filice v. State*, 886 N.E.2d 24, 37 (Ind. Ct. App. 2008).

Here, Bunch unbuttoned J.G.'s pants and pulled her pants and underwear down. *See Bryant*, 644 N.E.2d at 861 (observing, when considering the element of force, that "the evidence showed that [the defendant] took down [the victim's] pants and underwear."). Further, J.G. repeatedly and clearly protested Bunch's actions, yet Bunch ignored her protests and, in the face of them, engaged in intercourse. *See Tobias*, 666 N.E.2d at 72 (finding the evidence supported the element of force, in part because the defendant ignored the victim's "lack of consent, verbal resistance, and requests for him to stop"). J.G. was crying, but Bunch continued, maintaining a position of control on top of her. The sexual assault examination demonstrated abrasions on J.G.'s vagina, which were consistent with non-consensual sex. Consistent with our standard of review, we conclude that the evidence was sufficient to establish that J.G. "perceived [Bunch's] force or imminent threat of force as compelling her compliance." *Filice*, 886 N.E.2d at 37.

## II. Appropriateness of the Sentence

Bunch next argues that his twelve-year sentence was inappropriate. We may revise a sentence after careful review of the trial court's decision if we conclude that the sentence is inappropriate based on the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). "Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate." *McMahon v. State*, 856 N.E.2d 743, 749 (Ind. Ct. App. 2006) (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)). The reviewing court "must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique

perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007).

In support of his character, Bunch contends that the trial court should have found his low risk to reoffend as a mitigating circumstance. A trial court's "reasons given, and the omission of reasons arguably supported by the record, are reviewable on appeal for abuse of discretion," *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* at 490. Still, "[a]n allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* at 492. In his brief, Bunch makes only a single-sentence argument as to this point—a threadbare assertion that the trial court should have found that Bunch had a low risk to reoffend. *Appellant's Br.* at 16 ("A proper mitigator was that Bunch's actions were not likely to happen again and he would respond to a short term imprisonment."). Bunch has thus failed to meet his burden, and has established neither the significance of this potential factor nor why the record clearly supports it.

Bunch further contends that the trial court unreasonably determined that his failure to appear at the trial was an aggravating factor. The trial court observed that, although Bunch spoke of wanting to set a positive example for his children, his failure to appear gave the example of running away from circumstances and demonstrated "significant

8

character flaws." *Tr.* at 207. We do not find that the trial court abused its discretion in classifying Bunch's failure to appear as an aggravating factor.

In further support of his character, Bunch urges that several witnesses testified as to his positive character and mild-mannered nature, and that he has a limited criminal history, which consists of one prior drunk driving conviction. He contends that the failure to appear was just a lapse of judgment. Nevertheless, the trial court noted that Bunch displayed "an attitude of total lack of empathy for the victim and . . . a hostile aggressive angry attitude." *Id.* Additionally, Bunch's comments made at sentencing appeared to shift blame to the victim, altogether demonstrating that a sentence of twelve years is not inappropriate in light of his character.

As to the nature of the offense, Bunch contends that his actions do not warrant an aggravated sentence because he did not use weapons or pin J.G. against the car seat, nor did he engage in any coercive or threatening behavior prior to the sexual intercourse. Bunch's arguments are unpersuasive. Bunch evinced coercion when he singled out an intoxicated woman, invited her back to his home on false pretenses, maneuvered his car in a manner to conceal his actions, removed her clothing, and engaged in forceful sexual intercourse, after she already had said no and was crying, and as she continuously pleaded with him to stop. Bunch has failed to demonstrate that the trial court's sentence was inappropriate.

We further note that in its discussion of mitigating circumstances, the trial court found that J.G. "facilitated" the rape with her actions by placing herself in the position that "she became a victim." *Tr.* at 207-08. Although it does not factor into our decision,

9

we disapprove the trial court's finding of mitigation that the victim had facilitated the rape. Whether or not intoxicated, a rape victim is not responsible for her victimization, and the victim's alcohol consumption does not mitigate, excuse, or justify the crime. Here, the defendant lied to the victim and her friends in an effort to manipulate their coming to his house where he used force to compel sex with the victim, who was much smaller in size than he, after the victim had repeatedly said, "No." The victim's intoxication was not a proper mitigator, and she did not in any manner "facilitate" the rape.

Affirmed.

ROBB, C.J., and RILEY, J., concur.