## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 25 2015, 8:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Harold Baker,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 25, 2015<br><br>Court of Appeals Case No.<br>49A02-1412-CR-889<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Marc Rothenberg, Judge<br><br>Trial Court Cause No. 49G02-1402-FB-6044 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Harold Baker (Baker), appeals his conviction for rape, a Class B felony, Ind. Code § 35-42-4-1(a)(1) (2013); criminal confinement, a Class D felony, I.C. § 35-42-3-3(a)(1) (2013); possession of a narcotic drug, a Class D felony, I.C. § 35-48-4-6(a) (2013); battery resulting in bodily injury, a Class A misdemeanor, I.C. § 35-42-2-1(a)(1)(A) (2013); interference with the reporting of a crime, a Class A misdemeanor, I.C. § 35-45-2-5(1) (2013); and possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11(1) (2013).

We affirm.

## ISSUES

Baker raises two issues on appeal, which we restate as follows:

(1) Whether the State presented sufficient evidence beyond a reasonable doubt to support Baker's conviction for rape; and

(2) Whether Baker's conviction and sentences for rape and criminal confinement violate the constitutional prohibition against double jeopardy.

## FACTS AND PROCEDURAL HISTORY

In 2006, Baker and B.A. began dating and were involved in an on-again/off-again romantic relationship for the next eight years. On February 4, 2014, Baker spent the evening at B.A.'s house in Indianapolis, Marion County, Indiana. At some point, Baker expressed interest in engaging in sexual intercourse with B.A., but B.A. declined. That night, B.A. slept alone in her bedroom and Baker slept in the bathroom.

[5] The next day, B.A. woke up at approximately 2:00 p.m. When she emerged from her bedroom, Baker was sitting on the couch in the living room. She observed that he was drinking whiskey and appeared to be "in a foul mood." (Tr. p. 74). Baker reiterated his desire for sexual intercourse, and B.A. again refused. As B.A. walked into the kitchen, Baker, who was "complaining about not having sex[,]" followed and pushed her down to the floor. (Tr. p. 105). B.A. tried to stand, but Baker "hit [her] on the side of the face and knocked [her] back down." (Tr. p. 75). Baker then rolled B.A. onto her stomach and held her down by the back of her neck as he laid down on top of her and "yanked up [her] nightgown and [attempted] to jam his hand into [her] vagina." (Tr. p. 78). B.A., who was scared and struggling to breathe under Baker's body weight, then stated, "If this is what you want, then let's go in the bedroom." (Tr. p. 79). At her suggestion, Baker stood, and the two went into B.A.'s bedroom. B.A. positioned herself "on all fours" on the bed because she "didn't want to look at him." (Tr. p. 80). Baker applied some lubricant and inserted his penis into B.A.'s vagina. After a few minutes, Baker stopped the intercourse and went to the bathroom to smoke a cigarette. B.A. did not know whether Baker ejaculated.

[6] B.A. went to the bathroom to confront Baker about what had just happened. The two began arguing, and Baker punched B.A. in the side of her face using a closed fist. B.A. stated that she was going to call the police, so Baker "chopp[ed] on her arm" until he could grab the cell phone out of her hand. (Tr. p. 83). During this struggle, B.A. scratched Baker's neck. Baker held the phone

over B.A.'s head and threatened to break it unless she forgave him. Once B.A. agreed to forgive him, Baker returned her cell phone. B.A. then texted a friend and asked her to call the police. A few minutes later, Baker rejoined B.A. in the living room and informed her that he was in possession of her loaded, semi-automatic handgun, which she normally kept hidden in her dresser drawer. B.A. reported that Baker pointed the gun at her and subsequently ejected the magazine and ensured the chamber was empty. Despite B.A.'s pleas, Baker refused to give her the now-unloaded firearm. When the police arrived, Baker concealed the gun in a rolled-up rug in the hallway.

[7] After speaking with B.A., the police officers placed Baker under arrest. During the search incident to arrest, police officers discovered marijuana and heroin in Baker's pockets. Baker was transported to the Sex Crimes Office and detained in an interview room. At some point when there was no other law enforcement personnel present, Baker—who was not physically restrained—walked out of the interview room and exited the building. He was found at his home the following day and was re-arrested. However, because Baker had just ingested a handful of pills, the officers transported him to the hospital to be treated for a possible overdose. While he was in the hospital, the police also obtained a search warrant to have hospital personnel obtain DNA samples from Baker.

[8] After the police left her home on the evening of the assault, B.A. drove herself to the emergency room at Methodist Hospital for a sexual assault examination. After interviewing B.A., Sexual Assault Nurse Examiner Danielle Ford (Nurse Ford) conducted a physical assessment and documented B.A.'s various injuries.

Nurse Ford noted a purple bruise on B.A.'s right temporal area; "a bruise that was painful to palpation" on the right side of her upper chest; "severe pain" on the back part of B.A.'s neck; "an area of swelling and some bruising, purple discoloration" in the middle of B.A.'s back; a bruised wrist; and scratches/scrapes on B.A.'s neck, elbow, and forearm. (Tr. pp. 172, 174-75). During the pelvic portion of the examination, Nurse Ford found no injuries to B.A.'s genital organs. However, Nurse Ford explained that the absence of genital injuries during a sexual assault examination is "not uncommon" due to the elasticity of a vagina. (Tr. p. 183). Forensic serology testing and DNA analysis confirmed the presence of Baker's seminal fluid inside B.A.'s vagina. DNA analysis also indicated the presence of Baker's skin cells underneath B.A.'s fingernails.

[9] On September 21, 2014, the State filed an amended Information, charging Baker with Count I, rape, a Class B felony, I.C. § 35-42-4-1(a)(1) (2013); Count II, criminal confinement, a Class D felony, I.C. § 35-42-3-3(a)(1) (2013); Count III, possession of a narcotic drug, a Class D felony, I.C. § 35-48-4-6(a) (2013); Count IV, battery resulting in bodily injury, a Class A misdemeanor, I.C. § 35-42-2-1(a)(1)(A) (2013); Count V, pointing a firearm at another person, a Class D felony, I.C. § 35-47-4-3(b) (2013); Count VI, interference with the reporting of a crime, a Class A misdemeanor, I.C. § 35-45-2-5(1) (2013); and Count VII, possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11(1) (2013).

[10] On September 22-23, 2014, the trial court conducted a jury trial. At the close of the evidence, the jury returned a guilty verdict on Counts I, II, III, IV, VI, and

VII. The trial court entered a judgment of conviction on the same and a judgment of acquittal as to Count V. On December 3, 2014, the trial court held a sentencing hearing. Based on double jeopardy concerns, the trial court merged Count IV, battery resulting in bodily injury, into Count VI, interference with the reporting of a crime. Thereafter, the trial court imposed fifteen years, with three years suspended, for rape; two years for criminal confinement; two years for possession of a narcotic drug; one year for interference with the reporting of a crime; and 180 days for possession of marijuana. The trial court ordered all Counts to run concurrently, resulting in an aggregate sentence of twelve years executed in the Indiana Department of Correction and three years suspended to probation.

[11] Baker now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of Evidence*

[12] Baker first claims that there is insufficient evidence to support his rape conviction. When reviewing a claim of insufficient evidence, our court does not reweigh evidence or assess the credibility of witnesses. *Gale v. State*, 882 N.E.2d 808, 816-17 (Ind. Ct. App. 2008). Rather, we will consider only the evidence and any reasonable inferences therefrom that support the verdict. *Id.* at 817. So long as there is "evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt[,]" we will affirm the conviction. *Id.*

[13]     In order to convict Baker of rape as a Class B felony, the State was required to prove that he

> knowingly or intentionally ha[d] sexual intercourse with a member of the opposite sex when:
> (1) the other person [was] compelled by force or imminent threat of force;
> (2) the other person [was] unaware that the sexual intercourse [was] occurring; or
> (3) the other person [was] so mentally disabled or deficient that consent to sexual intercourse [could not] be given.

I.C. § 35-42-4-1(a) (2013).

### A. *Force or Imminent Threat of Force*

[14]     On appeal, Baker contends that "[e]ven if the evidence supports the conviction for confinement arising out of the acts in the kitchen, it does not show that the act of sexual intercourse that occurred later in the bedroom was compelled by force or threat of force." (Appellant's Br. p. 7). Instead, he asserts that the uncontroverted evidence establishes "that B.A. suggested that they go into the bedroom to have sex" and that B.A. "cooperated without resistance." (Appellant's Br. p. 7).

[15]     The element of rape requiring proof that the victim was "compelled by force or imminent threat of force"

> demonstrates that it is the victim's perspective, not the assailant's, from which the presence or absence of forceful compulsion is to be determined. This is a subjective test that looks to the victim's perception of the circumstances surrounding

the incident in question. The issue is thus whether the victim perceived the aggressor's force or imminent threat of force as compelling her compliance.

*Newbill v. State*, 884 N.E.2d 383, 392 (Ind. Ct. App. 2008) (quoting *Tobias v. State*, 666 N.E.2d 68, 72 (Ind. 1996)), *trans. denied*. With respect to evidence sufficiency, "'the force necessary to sustain' a conviction of rape 'need not be physical,' and 'it may be inferred from the circumstances.'" *Id.* (quoting *Bryant v. State*, 644 N.E.2d 859, 860 (Ind. 1994)). Moreover, "'[f]orce or threat of force may be shown even without evidence of the attacker's oral statement of intent or willingness to use a weapon and cause injury, if from the circumstances it is reasonable to infer the attacker was willing to do so.'" *Jones v. State*, 589 N.E.2d 241, 243 (Ind. 1992) (quoting *Lewis v. State*, 440 N.E.2d 1125, 1127 (Ind. 1982), *cert. denied*, 461 U.S. 915 (1983)).

[16] In arguing that B.A. was not compelled by force or threat of force, Baker relies on *Jones*, in which our supreme court found the evidence did not support a finding that the defendant

> used force or threats to encourage [the alleged victim] to engage in sexual intercourse. He asked her three times, and on the third time she "just let him have it." There was no evidence of any previous threats or force against [the alleged victim] from which the trier of fact could infer a fear of force or threats on this occasion.

*Id.* We, however, find the present case clearly distinguishable from *Jones*. Here, before B.A. suggested that they go to the bedroom, Baker had followed

her into the kitchen—complaining that he was being denied sex and accusing her of infidelity—and knocked her down to the floor. When she tried to stand, Baker hit her in the face and shoved her back down. As he confined B.A. to the floor, Baker "yanked up [her] nightgown" and roughly attempted "to jam his hand into [her] vagina." (Tr. p. 78). The photographs admitted at trial depicted bruises on B.A.'s face, chest, back, and neck. Furthermore, B.A. testified that she only offered to go into the bedroom with Baker because "I was terrified. I couldn't breathe. I didn't know if I was going to die or going to be raped or I didn't know what was going to happen and I was afraid. So, I wanted to get myself out of that position." (Tr. p. 92). From this clear display of force immediately prior to the sexual intercourse, we find that a trier of fact could reasonably infer that B.A. was compelled by the fear of force or the imminent threat of force.

### B. *Mistake of Fact: Consent*

Baker further asserts that, based on B.A.'s behavior and apparent consent, he had no reason to believe that she was being compelled by force or imminent threat of force and, therefore, he could not have acted *knowingly* as the rape statute requires. "Although lack of consent is not an element of rape . . . per se, evidence which has a tendency to prove either consent or lack of consent is relevant to the element of compulsion." *Nolan v. State*, 863 N.E.2d 398, 403 (Ind. Ct. App. 2007), *trans. denied*. A defendant may raise consent as an affirmative defense under the mistake-of-fact statute, which provides that "[i]t is a defense that the person who engaged in the prohibited conduct was

reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense." I.C. § 35-41-3-7.

[18] Although Baker now posits that his rape conviction should be vacated because he engaged in consensual sexual intercourse with B.A., as the State points out, "at no point did [Baker] offer the trial court a jury instruction on the mistake-of-fact defense." *Nolan*, 863 N.E.2d at 404. Therefore, Baker has waived the matter for appellate review. *Id.* Waiver notwithstanding, we nevertheless find that there is insufficient evidence demonstrating that Baker made a reasonable mistake of fact as to whether B.A. consented. It is well established that, "[i]n order for mistake of fact to be a valid defense, three elements must be satisfied: (1) the mistake must be honest and reasonable; (2) the mistake must be about a matter of fact; and (3) the mistake must negate the culpability required to commit the crime." *Id.* (alteration in original).

[19] As to the first element, "[h]onesty is a subjective test dealing with what appellant actually believed" whereas "[r]easonableness is an objective test inquiring what a reasonable man situated in similar circumstances would do." *Id.* (first alteration in original). We must find some evidence of both. *Id.* Looking again to the circumstances surrounding B.A.'s plea to "go in the bedroom[,]" we cannot agree that Baker could have *reasonably* been mistaken that she was consenting to sexual intercourse. (Tr. p. 79). Rather, in light of the fact that B.A. had just denied Baker's request for sex, following which Baker shoved her down to the floor twice, grabbed her by the back of her neck, hit her in the face, and tried to force his hand into her vagina, we find that no

reasonable person would believe that B.A. spontaneously consented to have sexual intercourse with Baker. Accordingly, "even if [Baker] had properly preserved his appeal of the mistake-of-fact defense, that defense would fail as a matter of law." *Nolan*, 863 N.E.2d at 404.

## II. *Double Jeopardy*

[20] Baker next claims that his conviction and sentences for both rape and criminal confinement violate the Double Jeopardy Clause of the Indiana Constitution. Article 1, section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." The Indiana Supreme Court has determined that, for purposes of double jeopardy, two offenses are the same offense if, "with respect to *either* the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Our court reviews *de novo* whether a defendant's conviction violates the Double Jeopardy Clause. *Goldsberry v. State*, 821 N.E.2d 447, 458 (Ind. Ct. App. 2005).

[21] On appeal, Baker contends that his conviction for rape and criminal confinement violate the actual evidence test because "the only force employed to commit the rape was precisely the same force used to commit the confinement." (Appellant's Br. p. 13). Under the actual evidence test for double jeopardy, our court must "examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts." *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013).

"[W]e must conclude that there is 'a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" *Id.* (quoting *Richardson*, 717 N.E.2d at 53). A "'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." *Id.* (quoting *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008)). We will find no double jeopardy violation if "the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Id.* (quoting *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002)). On review, our court will "evaluate the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel." *Id.* at 720.

[22] As already discussed, Baker's conviction of rape as a Class B felony required the State to establish that he "knowingly or intentionally ha[d] sexual intercourse with [B.A.] when . . . [B.A.] [was] compelled by force or imminent threat of force." I.C. § 35-42-4-1(a)(1) (2013). In turn, Baker's conviction of criminal confinement as a Class D felony required proof that he "knowingly or intentionally . . . confine[d] [B.A.] without [B.A.'s] consent." I.C. § 35-42-3-3(a)(1) (2013). We find that the jury was presented with sufficiently distinct evidence to separately establish the elements of each offense. Contrary to Baker's assertion, the force used to compel sexual intercourse greatly exceeded the confinement of B.A. The evidence establishes that Baker—who had been

expressing his anger about being denied sexual intercourse and had accused B.A. of infidelity—knocked B.A. to the floor twice and hit her across the face. He then pulled up her nightgown and tried to force his hand into her vagina until she eventually agreed, out of fear, to submit to sexual intercourse. On the other hand, the elements of criminal confinement are satisfied by the evidence demonstrating that Baker held B.A. down on the floor by lying on top of her with the full weight of his body as she struggled to breathe and free herself. Because we do not find a "reasonable possibility" that the jury relied on the same evidentiary facts to establish the essential elements of both rape and criminal confinement, Baker's conviction does not violate Indiana's Double Jeopardy Clause. *Garrett*, 992 N.E.2d at 719.

## CONCLUSION

[23] Based on the foregoing, we conclude that there is sufficient evidence to sustain Baker's conviction of rape as a Class B felony beyond a reasonable doubt. We further conclude that Baker's conviction for both Class B felony rape and Class D felony criminal confinement does not run afoul of Indiana's Double Jeopardy Clause.

[24] Affirmed.

[25] Bailey, J. and Barnes, J. concur