# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2019, 5:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Andrew J. Baldwin
Sean R. Moore
Luke Purdy
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Supervising Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jordan Lee Haehl,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | December 20, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2559<br><br>Appeal from the Shelby Superior Court<br><br>The Honorable R. Kent Apsley, Judge<br><br>Trial Court Cause No.<br>73D01-1704-F3-7 |

**Altice, Judge.**

# Case Summary

Following a jury trial, Jordan Haehl was convicted of rape as a Level 1 felony. Haehl appeals, presenting three issues for our review:

> 1. Did the State present sufficient evidence to support Haehl's conviction for Level 1 felony rape?
>
> 2. Did the trial court abuse its discretion in permitting the State to introduce expert testimony concerning why victims of domestic violence might recant their testimony?
>
> 3. Did the trial court commit fundamental error in the manner in which it responded to a jury question?

We affirm.

# Facts & Procedural History

Haehl and A.H. had been in a romantic relationship for nearly ten years, had two children together, and lived in Haehl's parents' house in Shelbyville. In the fall of 2016, A.H. began having an affair. On March 31, 2017, Haehl and A.H. separated, and A.H. moved out, taking the couple's children with her to live with her grandmother in Columbus, Indiana. On the morning of April 17, 2017, A.H. communicated with Haehl through text messages and phone calls and arranged to stop by Haehl's parents' house to pick up a laptop and other items. Haehl informed A.H. where the items were located and indicated that he would not be there.

[4] When A.H. arrived at the home, she did not see Haehl. She went to the dining room where Haehl told her the laptop would be and discovered it was not there. She then heard a door open and Haehl entered, yelling at her about destroying their family. Haehl had a rifle in his right hand. Haehl and A.H. started to argue. When A.H. went outside, Haehl followed. Haehl calmed down, but things escalated again when A.H. told him she was going to leave. Haehl pointed the rifle into the air and fired a shot before falling to his knees. A.H. also fell to her knees and begged Haehl not to hurt himself. Haehl stood up and fired another shot, this time in the direction of the driveway.

[5] Haehl told A.H. to get in the car but did not initially tell her where they were going. A.H. got in the car because she "didn't want to lose [Haehl] and he had a gun in his hand." *Transcript Vol. 1* at 179. Haehl put the gun in the backseat and started driving. He said he was going to the business where the man with whom A.H. was having an affair worked and that he was going to kill him and then himself while she watched. Haehl drove recklessly, speeding and swerving on the roadway and threatening to hit a tree. A.H. eventually convinced Haehl to turn around and go back to his parents' house.

[6] Once back at the house, Haehl told A.H. to stay in the car. He then grabbed the gun out of the backseat and walked around the side of the garage where A.H. could not see him. A.H. waited for a couple of minutes in silence and then she heard a gunshot. Believing that Haehl had shot himself, A.H. got out of the car to check on him. As she came around the side of the garage, she saw

Haehl standing there with the rifle pointed toward the ground. A.H. convinced Haehl to go inside so they could talk. Haehl kept the rifle with him.

[7] A.H. and Haehl talked for about fifteen to twenty minutes before "[t]hings got heated" again. *Id.* at 191. Haehl directed A.H. to go upstairs, and she complied. Haehl, with the gun still in his hands, followed A.H. into his parents' bedroom, where he put the rifle down on the love seat at the foot of the bed. Haehl then grabbed A.H.'s hand and started kissing her neck. When A.H. asked him what he was doing, Haehl got mad. He said, "I just want you to love me, and I just want to feel what that feels like one more time" and that if she "was going to be unable to love him like that, that he was going to hurt himself with the gun." *Id.* at 201. A.H. "really thought [Haehl] was gonna kill himself," and she "was worried about [her] kids, and [she] was worried about [herself], and [she] was worried about him not being around." *Id.* at 201. Haehl asked A.H. to give him "one more moment" and "[l]et [him] feel what it feels like to be loved by [her] one more time." *Id.* at 212. A.H. understood Haehl to mean that he wanted to have sex, so she took off her pants and her underwear and threw them on the floor. Haehl lifted A.H. onto the bed and inserted his penis into her vagina.

[8] After A.H. left the house, she met up with the individual whom she had been seeing. She then went to the police station and reported what had transpired between her and Haehl. After giving her statement, A.H. complied with the request of the police to submit to a sexual assault examination. A detective then contacted Haehl, who voluntarily agreed to an interview. Haehl admitted

that he had been armed with a gun, had threatened to kill himself, and had sex with A.H.

[9]     On April 19, 2017, the State charged Haehl with Count I, rape as a Level 3 felony; Count II, criminal confinement as a Level 3 felony; Count III, kidnapping as a Level 3 felony; and Count IV, intimidation as a Level 5 felony. On June 6, 2018, the State was permitted to amend the charging information to add Count V, rape as a Level 1 felony.

[10]    A two-day jury trial commenced on August 7, 2018. The gist of A.H.'s trial testimony was that Haehl did not force her to have sex. The State had A.H. review her prior statement to police and then elicited testimony from her about inconsistencies between that statement and her trial testimony. A.H. acknowledged that in her statement to police, she described the encounter with Haehl as "forceful." *Id.* at 208. She also acknowledged that when the officer taking her report asked if she felt that Haehl forced her to have sex, she responded that "more than anything, . . . like it was a mental thing." *Id.* at 216. She also agreed that in her prior statement, she reported she was "scared that [Haehl] might threaten [her] or hurt [her]" and that "he might hurt the kids." *Id.* at 221.

[11]    At the conclusion of all of the evidence, the jury found Haehl guilty of Counts I, II, IV, and V, but not guilty of Count III. A sentencing hearing was held on September 26, 2018. The trial court entered judgment of conviction on only Count V, Level 1 felony rape, and sentenced Haehl to twenty-five years, with

five years suspended to probation. Haehl now appeals. Additional evidence will be provided as necessary.

# Discussion & Decision

## *1. Sufficiency*

[12] Haehl argues that the evidence is insufficient to support his conviction for Level 1 felony rape. Specifically, Haehl argues that because A.H. recanted the allegations giving rise to the charge of rape, the State impermissibly relied upon impeachment testimony from A.H. to prove its case.

[13] When we consider a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Perez v. State*, 872 N.E.2d 208, 212-13 (Ind. Ct. App. 2007), *trans. denied*. Instead, we consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id*. at 213. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id*. A conviction may be based solely on circumstantial evidence. *Id*.

[14] To sustain Haehl's conviction for Level 1 felony rape, the State's evidence must have established beyond a reasonable doubt that Haehl "knowingly or intentionally ha[d] sexual intercourse with [A.H.] when . . . [A.H.] [was] compelled by force or imminent threat of force" and that Haehl committed such "while armed with a deadly weapon." Ind. Code § 35-42-4-1(a)(1), (b)(2). The

force necessary to sustain a conviction for rape "need not be physical," and "it may be inferred from the circumstances." *Bryant v. State*, 644 N.E.2d 859, 860 (Ind. 1994). A threat of deadly force is sufficient if it is imminent enough to cause the victim to submit to the aggressor. *Ford v. State*, 543 N.E.2d 357, 358 (Ind. 1989).

[15] Here, the State presented evidence that Haehl had a gun and that he and A.H. argued about the state of their relationship. Haehl fired the gun at least twice and took A.H. on a dangerous drive, during which he threatened to kill the man she was seeing and then himself as A.H. watched. After returning to the house, Haehl took the gun and went out of A.H.'s sight, where he fired the gun again, making A.H. believe that he had shot himself. Shortly thereafter, Haehl directed A.H. to an upstairs bedroom and followed her with the gun in his hands. Haehl put the gun down near the bed and then kissed A.H. on the neck. When A.H. questioned him, Haehl got angry. Haehl told A.H. that if she "was going to be unable to love him like that, that he was going to hurt himself with the gun." *Transcript Vol. 1* at 201. Haehl lifted A.H. onto the bed and inserted his penis into her vagina. From this evidence, the jury could have concluded that A.H. was compelled by force or imminent threat of force to submit to sexual intercourse with Haehl and that Haehl possessed a gun during the

encounter.[1]  We will not reweigh the evidence or reassess the credibility of the witnesses on appeal.

## 2. Expert Testimony

[16]  Haehl argues that the trial court should not have admitted expert testimony about why domestic abuse victims might recant given that there was no evidence that A.H. was a victim of domestic abuse.  Specifically, Haehl argues that the expert's testimony was not relevant.  *See* Ind. Evidence Rule 401.

[17]  Although Haehl filed a Motion to Exclude Expert Witness Testimony the day before trial,[2] he did not object during trial when the State's expert testified about the dynamic of a domestic abuser-victim relationship and why a victim might recant.[3]  *See Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (citing *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000)) (noting that to preserve an issue for appellate review, the defendant must contemporaneously object at trial, even if he filed a pretrial motion to exclude the evidence).  Haehl has therefore waived the issue for our review.

---

[1]  Haehl suggests that the State impermissibly relied upon impeachment evidence as substantive evidence.  Indeed, the State referred A.H. to her prior statement to police and elicited testimony from her regarding inconsistencies between that statement and her trial testimony.  Haehl did not object to such testimony or seek a limiting instruction.  Haehl has therefore waived the issue.

[2]  The trial court addressed the motion prior to the start of the jury trial and denied it on timeliness grounds.

[3]  Haehl later objected to the expert's testimony regarding matters not relevant to instant circumstances.

# 3. Jury Question

[18] Haehl argues that the trial court erred when it responded to a question posed by the jury during its deliberations without his input. Haehl asserts that the jury requested A.H.'s testimony from both days of the jury trial and the trial court responded that such was not available and that the jurors must rely on their collective memory of her testimony. He also notes other questions posed by the jury and the lack of a record of his involvement in deciding how to respond thereto. Specifically, Haehl argues that the transcript does not show that he or the attorneys were involved in deciding how to respond to the jury's question or how the court went about responding to the jury's question. Acknowledging that he did not bring the alleged error to the court's attention, Haehl argues that such amounted to fundamental error.

[19] Haehl does not address why he did not specifically request to have those parts of the proceedings transcribed or, if no transcript was available, why he did not request a certified statement concerning how the trial court addressed the jury's questions. *See* Ind. Appellate Rule 31. Without a transcript or certified statement, we would have to speculate to address Haehl's arguments. This is not within our purview. In short, Haehl has not established that the trial court committed error, let alone fundamental error.

[20] Judgment affirmed.

Brown, J. and Tavitas, J., concur.